## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SHANE HARRINGTON, BRANDY KROESE, JOSEPH EVANS, and H & S CLUB OMAHA, INC., | ) ) ) ) | **CASE NO.  8:19CV121** |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| CITY OF OMAHA, VAUGHN COTTON, CHRISTOPHER PERKINS, BRIAN MCDOWELL, in their individual and official Capacities as Omaha Police Officers, and JOHN DOE OMAHA POLICE OFFICERS #1, #2, and #3 in their individual and official capacities, | ) ) ) ) ) ) ) | **BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| Defendants. | ) | |

Prepared and submitted by:
MICHELLE PETERS, No. 20021
Deputy City Attorney
804 Omaha/Douglas Civic Center
1819 Farnam Street
Omaha, NE 68183
Telephone:  402/444-5115
Fax:  402/444-5125
Email:  michelle.peters@cityofomaha.org

## INTRODUCTION

This Brief is submitted by the following defendants: the City of Omaha and Vaughn Cotton. Plaintiffs have added additional named defendants in their Amended Complaint, but they have not been served with process.

Plaintiffs previously requested a Temporary Restraining Order upon which an evidentiary hearing was held on March 26, 2019. This court denied such relief. Presently before the Court is the City Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. Plaintiffs' Complaint removes some defendants and causes of actions, but generally contains legal conclusions, arguments, and non-admissible evidence (Exhibits 1-4). For all the reasons set forth herein, the Defendants respectfully request that the Court grant this Motion to Dismiss.

## BACKGROUND

Plaintiff Shane Harrrington is the principal officer and owner of H & S Club Omaha ("Club Omaha"), which is a live nude club now located 2603-2607 S. 120th Street, Omaha, but at all times relevant to the present case, the business was located at 7301 Farnam Street in Omaha, Nebraska. Club Omaha does not possess a liquor license under the Nebraska Liquor Control Act nor does it sell alcohol on its premises. The club allows members to bring in their own alcohol for consumption on the premises, which under Nebraska law requires these types of clubs to obtain a liquor license. On April 18, 2018, the Nebraska State Legislature passed Legislative Bill 1120 which included, among other things, a new licensure requirement for "bottle clubs." The bill took effect on July 19, 2018. In addition, on August 14, 2018, the Omaha City Council passed an ordinance #41532 which amended certain sections of the Omaha Municipal Code to coincide with the State legislation on bottle clubs.

For all the reasons set forth below, the Defendants' Motion to Dismiss the Amended Complaint must be granted.

## UNDISPUTED FACTS

1.      Plaintiff, Shane Harrington, is the owner of Club Omaha located at 7301 Farnam Street, Omaha, which is a nude dance club that does not have a liquor license and does not sell liquor, but which allows members to bring their own alcohol. (Amended Complaint, Doc. #30, ¶¶ 6, 31)

2.      On or about April 26, 2018, the State of Nebraska enacted a new law that regulated private bottle clubs under the Nebraska Liquor Control Act, via the Nebraska Liquor Control Commission, LB 1120, of which this court can take judicial notice.

3.      Plaintiff filed a lawsuit in Lancaster County District Court challenging LB 1120. That case was dismissed by Judge Susan Strong and is currently on appeal before the Nebraska Supreme Court (S-18-0721) which may be heard at the Court's August session. The Court can take judicial notice of this case.

4.      Plaintiffs Harrington and H & S Club Omaha are Plaintiffs in a case that was heard by this Court and dismissed on judgment on the pleadings, which is currently on appeal before the Eighth Circuit Court of Appeals. The Court may take judicial notice of those proceedings. (See District Court case *Harrington, et al. v. Susan Strong, et al.,* Case No. 8-18-CV-383; Appeal Case No. 19-1498 "*Harrington I*").

5.      On March 12, 2019, Omaha Police officers issued misdemeanor citations on Plaintiffs Brandy Kroese and Joe Evans at Club Omaha. (See generally, Amended Complaint, Doc. #30, ¶¶ 8-12)

6.      Plaintiff Brandy Kroese was charged with permitting the unlawful consumption of alcohol, a Class IV misdemeanor. That case is pending in Douglas County Court at case number CR-19-8087. Trial is set for June 19, 2019. The Court can take judicial notice of this case.

7.     Plaintiff Joseph Evans was charged with permitting the unlawful consumption of alcohol, a Class IV misdemeanor. That case is pending in Douglas County Court at case number CR-19-8086. Trial is set for June 19, 2019. The Court can take judicial notice of this case.

## ARGUMENT

## I.

## RULE 12(b) STANDARD

Fed.R.Civ.P. 12(b)(1) requires dismissal if the Court lacks jurisdiction over the subject matter of the action. Fed.R.Civ.P. 12(b)(6) requires dismissal if plaintiff fails to state a claim upon which relief could be granted. While Fed. R. Civ. P. 8(a)(2) only requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A complaint that only alleges legal conclusions or "a formulaic recitation of the elements of a cause of action" does not meet this threshold standard, "nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678, quoting *Bell Atlantic corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

A complaint must plead enough factual matter that, if taken as true, will "state a claim to relief that is plausible on its face." *Twombly* at 570. If the complaint fails to do so, it will not survive when confronted with a motion to dismiss. When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a reviewing court must apply a plausibility standard to the claims alleged in the complaint. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678. "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief'" *Id.* at 678, quoting *Twombly* at 557. While the Court should accept factual allegations articulated in a complaint when considering a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

The Defendants have asked the Court to take judicial notice of certain items that include: State laws, City ordinances of the City of Omaha, pending lawsuits and appeals, as well as the transcript from the hearing before this Court on Plaintiffs' Motion for Temporary Restraining Order. This Court "may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), *quoting Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir.), *cert denied*, 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed. 2d 799 (1999) and *Piper Jaffray Cos. v. National Union Fire Ins. Co.*, 967 F.Supp. 1148, 1152 (D.Minn.1997). "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion." *Gorog v. Best Buy, Co., Inc.*, 760 F.3d 787, 791 (8th Cir.2014), quoting *Casazza v. Kiser*, 313 F.3d 414, 417 (8th Cir.2002)(alteration in original)(citations omitted). "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Id.*, quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir.2012)(citations omitted). The District Court may take notice of and consider items in the public record. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir.2007), citing *Papasan v. Allain*, 478 U.S. 265, 269 fn. 1, 106 S.Ct. 2932 (1986).

Defendants request the Court to consider the state laws, City ordinances, pending cases and the transcript of the TRO hearing described herein as public records which do not contradict Plaintiffs' Complaint and are necessary for deciding this Motion to Dismiss.

## II.

### INDIVIDUAL DEFENDANT MUST BE DISMISSED

Plaintiffs have sued Officer Vaughn Cotton in his individual and official capacity.

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman v. Barth,* 152 F.3d 907, 914 (8th Cir. 1998). Official-capacity claims against government officials are the functional equivalent of claims against the municipal entity in question. *See, e.g., Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998). To state a plausible claim for relief under § 1983 against an individual defendant, the complaint must allege facts supporting that defendant's "personal involvement or responsibility for the violations." *Ellis v. Norris,* 179 F.3d 1078, 1079 (8th Cir. 1999).

In this case, the City of Omaha is named, so there is no reason that Officer Cotton be named in his "official capacity." He should be dismissed in his official capacity.

Generalized allegations that all of the defendants have committed each of the purported wrongs must fail because they do not inform any particular defendant of the specific claims against

him/her in sufficient detail to permit him/her to defend him/herself against these claims. See, *Iqbal,* 556 U.S. at 678; *Ellis,* 179 F.3d at 1079 (affirming dismissal of a § 1983 case where the complaint failed to allege facts supporting and individual defendant's personal involvement in alleged constitutional violations.) Plaintiffs make no particular claims against Officer Cotton. (See e.g. Amended Complaint, Doc. #30, ¶¶ 8-15).

For all these reasons, Officer Cotton must be dismissed.


## III.

## ABSTENTION

This Court has analyzed and explained the abstention doctrine in detail in its decision *Phelps-Roper v. Heineman*, 710 F. Supp. 2d 890, 901 (D. Neb. 2010)

> Generally, federal district courts have a "virtually unflagging obligation" to exercise jurisdiction over proper cases. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, courts may abstain from deciding certain issues to preserve "traditional principles of equity, comity, and federalism." *Alleghany v. McCartney,* 896 F.2d 1138, 1142 (8th Cir.1990). Federal court abstention is divided into several limited doctrines aimed at preserving these principles. *See generally Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (abstention appropriate where a challenged state statute is susceptible of a construction by the state court that would modify or avoid a federal constitutional question ("*Pullman* abstention")); *Colorado River Water Conservation,* 424 U.S. at 817–820, 96 S.Ct. 1236 (1976) (abstention appropriate to avoid duplicative litigation ("*Colorado River* abstention")); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (abstention appropriate to avoid needless conflict in administration of state affairs ("*Burford* abstention")); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (abstention appropriate to avoid intrusion on state enforcement of state laws in state courts ("*Younger* abstention")).

In this case, there are several reasons why this Court should abstain and dismiss Causes of Action I, II, and VI.

### A. *Younger* Abstention

The undisputed facts show there are pending state criminal actions against Joe Evans and Brandy Kroese which relate directly to these same matters. To the extent any issues are raised regarding the basis for the citations or any other matters which can properly be maintained through the criminal proceeding, those matters should be properly addressed by the State Court in the criminal case. Therefore, the "*Younger* abstention" doctrine applies. Unlike some of the other abstention doctrines, *Younger* abstention is mandatory. See *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 816 n. 22 (1976). In *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court set out a three-part test for deciding whether a district court should abstain in favor of a state proceeding. Before abstaining, the district court must determine that: (1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges. *Id.* at 432, 102 S.Ct. 2515.

In the present case, the criminal proceedings that raise important state interests against Mr. Evans and Ms. Kroese are currently pending in a Douglas County (Nebraska) Court. The state proceedings implicate important state/local interests insofar as they implicate the interpretation of the state law relating to alcohol sales and consumption. "State interests are matters that traditionally look to state law for resolution or implicate separate state policies." *Phelps-Roper*, 710 F. Supp. 2d at 902, citing *Taylor v. Jaquez,* 126 F.3d 1294, 1297 (10th Cir.1997).

Moreover, the criminal proceedings will afford Ms. Kroese and Mr. Evans the opportunity to present their constitutional claims relating to the legality of the warrant, as well as any issues relating to the propriety of citations that they allege are deficient. Because the requirements of *Younger* are met, this Court must abstain and dismiss any such causes of action.

- 7 -

### B.    *Burford* Abstention

Under the *Burford* abstention doctrine, the federal court should abstain where the federal action would interfere with complex state administrative proceeding through which the state is attempting to establish a coherent policy. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361-62 (1989). Although the State's and City's liquor laws are not particularly complex, the State and the City are attempting to establish a coherent policy through the Liquor Control Commission from which this Court should abstain. Plaintiffs refuse to avail themselves of the liquor licensing process for which there are consequences. Plaintiffs, however, are seeking redress in State court for interpretation of the laws. So for additional reasons set forth in the next subsection, this Court should abstain.

### C.    *Colorado River* and *Pullman* Abstention

Under the *Colorado River* abstention doctrine, abstention is warranted where the parties and claims raised in federal and state actions are duplicative. *Colorado River Water Conservation,* 424 U.S. at 817. As set forth in the undisputed facts, there are two almost parallel cases pending in federal (Case No. 8-CV-383; Appeal Case No. 19-1498 "*Harrington I")* and state court (S-18-000721). Specifically with regard to the state court action, any issue dealing with the legitimacy of a "bottle club" as defined in state statute and its applicability to this location, will be resolved by the Nebraska Supreme Court when that matter is heard. Therefore, the *Pullman* abstention doctrine, based on *Railroad Commission v. Pullman, Co.,* 312 U.S. 496 (1941) is also pertinent to these matters. The *Pullman* abstention doctrine allows the federal court to refrain from deciding an issue under the federal constitution when a resolution of state law "may moot or narrow the [federal] constitutional questions." *San Remo Hotel v. City of San Francisco,* 145 F.3d 1095, 1104 (9th Cir.

1998).

For all the reasons set forth herein, the Court should abstain and dismiss the causes of action properly resolved through the criminal or state court proceedings, or the pending administrative action.

## IV.

### ILLEGAL SEARCH AND SEIZURE - FOURTH AMENDMENT VIOLATIONS
### (First Cause of Action)

Plaintiffs' first cause of action appears to be two-fold. First undercover officers entered Club Omaha as patrons on several occasions to ascertain whether liquor was being consumed on the premises. (Amended Complaint, Doc #30, ¶ 44) Second, on March 12, 2019, Defendant Cotton and other unnamed police officers "trespassed on Plaintiffs' private property at 7301 Farnam Street without a warrant and conducted a search and seizure." (Amended Complaint Doc. #30, ¶ 45). However, these allegations are without merit. With regard to the entry by the undercover officers, the law clearly allows the government to use undercover agents, deception, and other methods to present a person already willing to commit a crime with the opportunity to commit a crime, but the law does not allow the government to persuade an unwilling person to commit a crime. See *Jacobson v. U.S.* 503 U.S. 540, 548, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). There is no allegation of entrapment in this matter. Undercover officers are allowed to enter an establishment, lie about being police officers, and conduct surveillance without a warrant. Plaintiffs present no law to the contrary.

With regard to the officers that issued the citations, this Court has already determined that the area where the officers entered is not a place where there is a general expectation of privacy. (See 8:18cv383; "Memorandum and Order", Doc. #64, pp. 22-24.) The parties agree that individuals "can

have a reasonable expectation of privacy in commercial premises, although that expectation 'is different from, and indeed less than, a similar expectation in an individual's home.'" *U.S. v. Lewis,* 864 F.3d 937, 941 (8th Cir. 2017) (quoting *New York v. Burger,* 482 U.S. 691, 700 (1987)). "Even if the general public is not invited onto commercial premises, an individual's expectation of privacy is not reasonable if he or she would reasonably expect the general public to enter the premises anyway." *Id.* (citing *U.S. v. Long,* 797 F.3d 558, 565 (8th Cir. 2015)).

The undisputed facts show that on March 12, 2019, Omaha Police officers came into the entry area of Club Omaha. This area has been previously described as the "vestibule" which is where the public enters, ID's are checked, and membership dues are paid or checked. In order to actually enter the "Club" (i.e. where the drinking and dancing take place), you must enter through another door. The exterior door to the club is not locked, and there is not a bouncer outside. Anyone seeking entry, whether a member or not, may open the door and enter the vestibule. Again, the officers only entered the vestibule area and did not enter the Club when they issued citations to the managers. This vestibule area cannot be considered an area in which an individual has any expectation of privacy because this is the area where the general public enters.

In addition to there being no expectation of privacy, the laws of the state of Nebraska do not require that officers have a warrant to enter the public area of a business. The tickets were issued pursuant to State law and in conformance with the Nebraska Rules of Criminal Procedure. Specifically, Defendants show the Court that Neb. Rev. Stat. § 29-422 states that it is the policy of the State of Nebraska to issue citations in lieu of arrest to the maximum extent possible. The Omaha Police Department had sufficient probable cause to issue arrest warrants for the three employees of Club Omaha; however, in accordance with the legislative intent of Neb.Rev.Stat. § 29-422, the Omaha Police issued citations in lieu of arresting the suspects. Arrests would have entailed

handcuffing them, transporting them in a police vehicle and booking them into the Douglas County Correctional Facility, which would have arguably caused much greater harm, embarrassment, cost, etc.

Pursuant to the stated legislative intent of issuing citations in lieu of arrest, the citation requires certain information. That information is set forth in Neb. Rev. Stat. § 29-424 and includes the name and address of the cited person. This is why identification was required by the police. In addition, that section requires that the person cited sign the ticket as their promise to appear on the dated listed on the citation. Failure to provide the information required in Neb. Rev. Stat. § 29-424 or refusal to sign the citation will result in arrest. (See Neb. Rev. Stat. § 29-427). This is why police told them they can either sign the ticket or they would be arrested.

Persons receiving a ticket are not interrogated or questioned which is why they were not read Miranda warnings or allowed to contact an attorney. Defendants deny they refused to let Plaintiff Kroese call Plaintiff Harrington. The officers let her make that call, she spoke to Harrington and Harrington told her to sign the ticket.

Finally, Neb. Rev. Stat. § 29-425, states in relevant part that "citations provided for in this section may be served in the same manner as an arrest warrant…." It is well-established law, that police with an arrest warrant may enter a residence to search for a suspect if they have a reasonable belief that the suspect is present at the time the warrant is executed. See *Payton v. New York,* 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1960); *U.S. v. Collins,* 699 F.3d 1039 (8th Cir. 2012). Again, residences are given much greater Fourth Amendment protections than businesses. So, if police can enter a residence to arrest a person, they certainly can enter the public area of a business to issue a citation (which is to be served in the same manner as an arrest warrant).

- 11 -

Moreover, in *Adewale v. Whalen*, 21 F. Supp. 2d 1006, 1014 (D. Minn. 1998), the district court opined "[i]t does not violate the Fourth Amendment to detain an arrestee while officers carry out the administrative steps incident to arrest. *See Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975);, ('[A]policeman's on-the-job assessment of probable cause provides legal justification for arresting a person ..., and for a brief period of detention to take the administrative steps incident to arrest.'); *Hood v. City of Chicago,* 927 F.2d 312 (7th Cir.1991) (affirming dismissal of complaint alleging that detention of arrestee for fingerprinting following misdemeanor arrest violated § 1983)."

In the Amended Complaint, Plaintiffs further allege that "an officer entered a private office of Club Omaha while grasping a gun to perform an illegal search." The Court will recall the testimony of Ms. Kroese at the TRO hearing in which she stated that she entered the office area to retrieve identification and the officer followed her in there. That was clearly for purposes of officer safety. However, even if the Court accepts Plaintiffs' statements as true, there is no allegation that a "search" was conducted and nothing was taken, viewed or otherwise disturbed in any way.

Finally, Plaintiffs Amended Complaint adds an invasion of privacy claim. Generally, Nebraska's invasion-of-privacy torts are codified in statute: "It is the intention of the Legislature to provide a right of privacy as described and limited by sections 20–201 to 20–211 and 25–840.01, and to give to any natural person a legal remedy in the event of violation of the right." Neb. Rev. Stat. § 20–201. Although the tort of invasion of privacy is not specifically exempted in Neb. Rev. Stat. § 13-910(7), this tort claim should not be considered by this court because Plaintiffs have not complied with the State of Nebraska's Political Tort Claims Act insofar as they have not filed a claim with the City, which is a prerequisite before a lawsuit may be initiated. See Neb. Rev. Stat. §13-906.

For all the foregoing reasons, this claim is without merit and must be dismissed.

- 12 -

# V.

## FIRST AMENDMENT
### (Second Cause of Action)

Plaintiffs' next claim is that the Defendants have attempted to intimidate Plaintiffs and discriminate against them purportedly by ticketing Evans and Kroese for allowing consumption of alcohol on the premises in violation of Nebraska State law. Non-obscene erotic and sexually explicit speech is entitled to some First Amendment protection. *SOB, Inc. v. Cty. of Benton*, 317 F.3d 856, 859 (8th Cir. 2003) "In determining whether the government has violated free speech rights," a court must first discern "whether the speech or conduct affected by the government action comes within the ambit of the First Amendment." *One World One Family Now v. City of Miami Beach,* 175 F.3d 1282, 1285 (11th Cir. 1999). The state law at issue is not subject to this free speech analysis because it does not regulate speech or expression. The law only applies to alcohol consumption on the premises and regulates whether a liquor license is required for such sales or consumption. It is silent about speech, expression, or music.

Plaintiffs' First Amendment free speech challenge lacks merit. This conclusion is compelled by *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294 (11th Cir. 2013), which considered a law prohibiting persons under 21 from entering or working in alcohol establishments. In that case, plaintiffs, who were under 21, argued that the law prevented them from engaging in protected speech activities at such establishments. However, the Eleventh Circuit held that the "text of the Ordinance does not regulate speech." *Id.* at 1300. The court further found that if the law does not even incidentally infringe upon protected expression, however, no First Amendment analysis needs to take place. *Id.* The Eleventh Circuit concluded that the alcohol-establishment age law did not infringe on a challenger's speech and therefore the ordinance did not trigger First Amendment analysis. *Id.* See

also, *Gary v. Warner Robins*, 311 F.3d 1334, 1340 (11th Cir. 2002) (upholding similar law even though it prevented plaintiff from dancing nude in alcohol clubs). Like the laws in *Indigo Room* and *Gary*, in the present case, the state law at issue governs only alcohol-serving establishments, but does not govern any speech or protected expression that takes place at those establishments. Because the "consumption" law does not even incidentally infringe on protected expression, Plaintiffs' free speech challenge fails as a matter of law.

In this case, Plaintiffs have not made a submissible First Amendment claim. Plaintiffs can point to no harm they have sustained by the citations being issued. A class IV misdemeanor is punishable by a fine only; no jail time would even be contemplated. Moreover, there is no action that would result in their business being shut down. Indeed, the undisputed facts show that during the pendency of these matters, Plaintiffs voluntarily shut down their location at 72nd Street and moved to 120th Street without any problems and have been operating at said location without issue. Any allegation that Plaintiffs have had their First Amendment rights chilled is a complete falsehood.

## VI.

## VIOLATIONS OF EQUAL PROTECTION
### (Third Cause of Action)

Plaintiffs claim they have been denied equal protection by the Defendants specifically by "entering and searching Plaintiffs' private property without a warrant . . . while obtaining warrants to search other private properties in the City of Omaha." (Amended Complaint, Doc. #30, ¶ 55)

> "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982)). In order to state an equal protection violation, the plaintiff must generally prove purposeful, invidious, intentional discrimination on the basis of the plaintiff's

membership in a suspect class. *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir. 1987).

*DePugh v. Smith*, 880 F. Supp. 651, 664 (N.D. Iowa 1995). The alleged facts do not indicate that any of the Plaintiffs are members of a suspect or quasi-suspect class, see *Gallagher v. City of Clayton,* 699 F.3d 1013, 1018 (8th Cir. 2012), and where a law does not "involve [ ] a suspect or quasi-suspect classification, the law must only be rationally related to a legitimate government interest." *Id.* Plaintiffs allege without any basis in fact that their "members, employees, and contractors, are largely minorities and other protected class members" (Amended Complaint, Doc. #30, ¶ 56), but such allegations are not supported by any other factual allegations. Only two employees (Kroese and Evans) are plaintiffs in this action. These allegations are conclusory in nature and without merit. Plaintiffs have alleged no facts in their Amended Complaint that would lead this Court to infer either disparate treatment or that such treatment was intentional.

Although not clear, Plaintiffs may also be alleging a "class of one" theory. Under a class-of-one theory, obviously a plaintiff does not allege membership in a protected class or group, but "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Robbins v. Becker,* 794 F.3d 988, 995 (8th Cir. 2015) (quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam)). However, in order to succeed on this type of claim, the plaintiff must make a showing that other similarly situated persons received preferential treatment. *Id.* "To be similarly situated for purposes of a class-of-one equal protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Id.* (quoting *Reget v. City of La Crosse,* 595 F.3d 691, 695 (7th Cir. 2010)).

Plaintiffs have failed to allege the existence of a similarly situated person or business entity

that was treated more favorably. The onus is on the Plaintiffs to provide the identity of some other person or entity that was treated more favorably by the City Defendants than the Plaintiffs under almost identical circumstances. Plaintiffs cannot meet this standard, and therefore, this claim must be dismissed.

## VII.

### VIOLATION of 42 U.S.C. § 1985
### (Fourth Cause of Action)

Plaintiffs next claim is that Defendants engaged in a conspiracy to violate their rights under 42 U.S.C. §§ 1985(2) and (3). U.S.C. § 1985(2) entitled "Obstructing justice; intimidating party, witness or juror" and provides:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment or any grand or petit jury in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

Subsection (3) provides:

> If two or more persons of any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; or for the purposes of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire

to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case or conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

"In general terms, section 1985 proscribes five different types of conspiracies: (1) conspiracies to interfere with the performance of official duties by federal officers (section 1985(1)); (2) conspiracies to interfere with the administration of justice in federal courts (first clause of section 1985(2)); (3) conspiracies to interfere with the administration of justice in state courts (second clause of section 1985(2)); (4) private conspiracies to deny any person enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws" (first clause of section 1985(3)); and (5) conspiracies to interfere with the right to support candidates in federal elections (second clause of section 1985(3)). *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429 (8th Cir. 1986), citing *Kush v. Rutledge,* 460 U.S. 719, 724, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983).

Plaintiffs claim the Defendants violated §1985(2) by "conspiring to deter, hinder, and obstruct, by intimidation, threat and force, Plaintiffs from exercising their right to work at Club Omaha." (See Amended Complaint, Doc. #30, ¶ 62). This type of behavior, even if it occurred, is not covered by §1985(2).

Plaintiffs also claim Defendants violated §1985(2) by "conspiring to injure, retaliating against, and punishing Plaintiffs for having exercised their right to seek judicial relief and chilling their exercise of that right in the future." (See Amended Complaint, Doc. #30, ¶ 63). Again, this

allegation is not covered by §1985(2). To prevail on a 1985(2) claim, a plaintiff must show that two or more defendants conspired together to injure him for participating in a federal lawsuit. *Carhart v. Smith,* 178 F.Supp.2d 1048, 1065 (D.Neb.2001) (*citing Gometz v. Culwell,* 850 F.2d 461, 464 (8th Cir.1988); *Rutledge v. Arizona Bd. of Regents,* 859 F.2d 732, 735 (9th Cir.1988); *Wright v. Illinois Dep't of Children & Family Servs.,* 40 F.3d 1492, 1507 (7th Cir.1994)). Plaintiffs do not allege that they have been deprived or prevented from bringing a case or testifying in a federal case. Indeed, this case, along with the pending appeal in *Harrington I*, indicate that Plaintiffs have exercised their rights to file a federal lawsuits without any obstruction by the Defendants.

Plaintiffs further allege in their Amended Complaint that the Defendants violated 42 U.S.C. § 1985(2) by denying Plaintiffs' equal protection of the laws. (See Amended Complaint, Doc. #30, ¶¶ 64-65). As discussed above, a plaintiff must show "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Biby v. Bd. of Regents of Univ. of Neb. at Lincoln*, 338 F. Supp. 2d 1063, 1074 (D.Neb. 2004), quoting *Wirth v. College of the Ozarks,* 26 F. Supp.2d 1185, 1188 (W.D. Mo. 1998), *aff'd*, 208 F.3d 219, 2000 WL 261132 (8th Cir. 2000); *See also Federer v. Gephardt,* 363 F.3d 754, 759 (8th Cir.2004) (a claim under the equal protection section of section 1985(3) requires proof of class-based animus). These allegations are without merit as Plaintiffs cannot meet the equal protection criteria as discussed in Section VI, *supra.*

In addition, Plaintiffs allege that Defendants violated §1985(3) by threatening and intimidating them "based on "their support and advocacy in a legal manner challenging and protesting laws related to Plaintiffs and Club Omaha," and for "exercising rights and privileges that they are guaranteed as citizens of the United States of America." (Amended Complaint, Doc. #30, ¶¶ 66-67)

Again, these claims are not covered by Section 1985. Subsection 3 covers private conspiracies. All the Defendants are either a governmental entity or employees of that entity.

For all the reasons set forth herein, the Plaintiffs' §1985 claims are without merit and no amendment to this claim would make such allegations cognizable before this Court.


## VIII.

### BREACH OF CONTRACT
### (Fifth Cause of Action)

Plaintiffs next claim alleges a state law cause of action. Plaintiffs allege that certain undercover officers (who have been named in the Amended Complaint, but not served), entered Club Omaha, as members, at various times for the purpose of doing surveillance as to whether the state liquor laws were being violated. Based on these undercover observations, officers ticketed certain management employees of Club Omaha. Plaintiffs now allege that these undercover officers violated the terms of the Club Omaha Membership Agreement.

Defendants recognize that in some cases where the Court has original jurisdiction, the Court may exercise supplemental jurisdiction in order to resolve these state law claims that are closely related to federal claims for reasons of judicial economy or otherwise. See generally, *Exxon Mobile Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 552, 125 S.Ct. 2611, 2617 (2005). Defendants would argue, however, that this breach of contract claim is not closely related to the federal claims.

Moreover, because all the other federal claims will be dismissed, as argued in this Brief, this Court should not exercise supplemental jurisdiction and these claims should also be dismissed pursuant to 28 U.S.C. §§ 1367(c)(3), insofar as the Court will dismiss all the claims over which it has original jurisdiction. In the Eighth Circuit, the preference is for a court to decline to exercise

supplemental jurisdiction over state law claims when all federal claims have been dismissed before trial. *See Johnson v. City of Shorewood, Minn.*, 360 F.3d 810, 819 (8th Cir. 2004).

Finally, Plaintiffs' claims on this matter are without merit. To state a claim for breach of contract, "the plaintiff must plead the existence of a promise, its breach, damages, and compliance with any conditions precedent that activate the defendant's duty." *Kotrous v. Zerbe*, 287 Neb. 1033, 846 N.W.2d 122, 126 (2014). With respect to the existence of a promise, Nebraska law "requires that the promisor intend to make a binding promise - a binding mutual understanding or 'meeting of the minds'[.]" *Blinn v. Beatrice Cmty. Hosp. Health Ctr., Inc.*, 270 Neb. 809, 708 N.W.2d 235, 248 (2006).

Plaintiffs have failed to allege the existence of a promise or damages sufficiently definite to support a claim for breach of contract. First, Plaintiffs cannot show that the term within their membership agreement that states "No law enforcement officer or investigator may join CLUB OMAHA or enter the property in their official capacity without a warrant or advance permission from Club Omaha" is legally binding or enforceable. Plaintiffs reiterate *ad nauseam* that Club Omaha is a "private membership club," but offers no legal definition or what protections such a classification may afford them. The only case law Defendants have found is that under Titles II and VII of the Civil Rights Act, certain private clubs are exempt from the Act insofar as it relates to employment discrimination; one claim that is actually not made in this case.

The law clearly allows the government to use undercover agents, deception, and other methods to present a person already willing to commit a crime with the opportunity to commit a crime, but the law does not allow the government to persuade an unwilling person to commit a crime. See *Jacobson v. U.S.* 503 U.S. 540, 548, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). There is no exception for private membership clubs, whatever those may be, with regard to this general rule.

- 20 -

Moreover, just because Plaintiffs post a laminated sign indicating police are not allowed, does not vitiate the ability of undercover officers to conduct an investigation into criminal wrongdoing.

This claim is without merit and must be dismissed.

## IX.

### DECLARATORY RELIEF
### (Sixth Cause of Action)

Plaintiff also seeks declaratory relief from the Court to have this Court declare that Club Omaha is not a "public place" under state law. (Amended Complaint, Doc. #30, ¶ 75)

"To have standing to seek declaratory relief, there must be a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Dolls, Inc. v. City of Coralville, IA.,* 425 F.Supp.2d 958, 977 (S.D. IA 2006) (quotations and citations omitted).

This Court has previously ruled that the issue as to whether Club Omaha constitutes a "bottle club" is barred by the doctrine of issue preclusion (See Memorandum and Order, Doc. #64, pg. 24 *Harrington I).* Plaintiff tries to dodge the same question and now wants the Court to opine as to whether Club Omaha is a public place pursuant to Neb. Rev. Stat. § 53-186.01. This request is not meritorious. As Plaintiffs indicate, that statute relates to "any **bottle club**, dance hall, restaurant, café, or club, **or** any place open to the public." (emphasis added) Judge Strong has already opined that Club Omaha is a "bottle club." So whether Club Omaha is "a place open to the public" is a red herring and not relevant.

Plaintiffs are not entitled to declaratory relief and this matter must be dismissed as a matter of law.

## X.

### EQUITABLE RELIEF
### (Seventh Cause of Action)

Finally, the Plaintiffs seek an order from this Court to enjoin the "Defendants from entering the private portion of Club Omaha at 2607 S. 120th Street without a warrant or advance permission. (Amended Complaint, Doc. #30, ¶ 94) The Eighth Circuit's long-standing analysis for determining whether injunctive relief is appropriate is set forth in *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 114 (8th Cir. 1981). The factors the Court must consider as set forth in *Dataphase* are as follows:  (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that movant will succeed on the merits; and (4) the public interest. *Id.* Plaintiffs bear the burden of proof on all four of these factors. *Lankford v. Sherman,* 451 F.3d 496, 503 (8th Cir. 2006); *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir. 1987). This standard applies in a request for permanent injunction as well, although the balance-of-harm and public-interest factors may not need to be taken into account in some situations. *Bank One, Utah v. Guttau,* 190 F.3d 844, 847 (8th Cir. 1999).

Moreover, an injunction is an extraordinary remedy that ordinarily should not be granted. *Roudachevski v. All-Am. Care Centers, Inc.,* 648 F.3d 701, 705 (8th Cir. 2011); citing *Watkins, Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003). For the reasons articulated by the Court on the hearing for Preliminary Injunction and TRO, the request for a permanent injunction should likewise be denied. Plaintiffs have not provided any additional facts, law or argument as to why injunctive relief is necessary in this case.

### A.       Irreparable harm

Plaintiffs cannot prove irreparable harm in this matter. "[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506-07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Plaintiffs must establish that irreparable harm will result unless injunctive relief is granted and that such harm cannot or will not be compensable by money damages. See *Doe v. LaDue,* 514 F.Supp.2d 1131, 1135 (D.Minn. 2007); *Northland Ins. Co. v. Blaylock,* 115 F.Supp.2d 1108, 1116 (D.Minn. 2000).

Plaintiffs cannot show any irreparable harm, and moreover, they don't even allege any harm for the alleged illegal searches. If Plaintiffs should prevail on this case, their damages are pecuniary only – although in what amount is completely speculative.

Moreover, this instant case arises out of the criminal citations that were issued on Plaintiffs Kroese and Evans. Those criminal cases are now set for trial for June 2019. The issues that Plaintiffs have with either the defective citations, interpretation of State law, "fruit of the poisonous tree," etc. can be, and should be, resolved in the criminal matter. Because Plaintiffs have an adequate remedy at law in the criminal case, they have not met this factor.

**B.      Success on the Merits**

Again, because the Plaintiffs have failed to show irreparable harm, this Court need not consider whether Plaintiffs will succeed on the merits. Nonetheless, the Defendants have presented ample proof in this Brief that success on the merits is not likely on any of the causes of action as set forth in the Amended Complaint.

Generally, the movant must only demonstrate a "fair chance of prevailing." *1-800-477-Pain Referral Serv., LLC. v. Otto,* 744 F.3d 1045, 1054 (8th Cir. 2014). For all the reasons set forth herein, the Defendants show that Plaintiffs cannot and will not succeed on any cause of action, and therefore, injunctive relief is not appropriate.

**CONCLUSION**

For all the reasons set forth herein, the Defendants respectfully request that this matter be dismissed based on the pleadings pursuant to F.R.Civ.P. 12(b)(6).

DATED this 4th day of June, 2019.

CITY OF OMAHA, et al., Defendants


By  /s/Michelle Peters_____
    MICHELLE PETERS, #20021
    Deputy City Attorney
    WILLIAM ACOSTA-TREJO, #23302
    Assistant City Attorney
    804 Omaha/Douglas Civic Center
    1819 Farnam Street
    Omaha, NE 68183
    Telephone:  (402) 444-5115
    Michelle.peters@cityofomaha.org
    William.acosta-trejo@cityofomaha.org

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4th, 2019, I electronically filed the foregoing **BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which sent notification to such filing to the following:  Evan Spencer 305 Broadway, 7th Floor, New York, NY 1000.

/s/Michelle Peters_____
